UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**WINONA RICHARDS**,                                  Civil Case No. 3:12-204-KI

                Plaintiff,                    OPINION AND ORDER

    v.

**COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION**,

                Defendant.


Bruce Brewer
419 5th Street
Oregon City, OR 97045

       Attorney for Plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201

Jordan D. Goddard
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Ave.
Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Winona Richards brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB").

I affirm the decision of the Commissioner.

## BACKGROUND

Richards filed an application for DIB on August 5, 2009, alleging disability from March

30, 2009.  The application was denied initially and upon reconsideration.  After a timely request

for a hearing, Richards, represented by counsel, appeared and testified before an Administrative

Law Judge ("ALJ") on April 14, 2011.

On April 28, 2011, the ALJ issued a decision finding Richards was not disabled within

the meaning of the Act and therefore not entitled to benefits.  This decision became the final

decision of the Commissioner when the Appeals Council declined to review the decision of the

ALJ on December 8, 2011.

Page 2 - OPINION AND ORDER

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ found Richards suffered from an intractable cough.  However, the ALJ found

this impairment did not meet or medically equal the requirements of any of the impairments

listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  With a residual functional capacity ("RFC")

permitting light work, no ladder, rope, or scaffold climbing, only occasional ramp and stair-

climbing, occasional crouching and crawling, frequent balancing, stooping, and kneeling, but no

concentrated exposure to temperature extremes, fumes, odors, dusts, gases, and other pulmonary

irritants, Richards could perform her past relevant work as a claims clerk/associate and sales

associate.

## FACTS

Richards, who was 58 years old at the time of her alleged onset date of disability, had a

high school degree and had worked as an insurance claims clerk/associate and as a retail sales

associate.  Richards received short-term disability benefits from Liberty Mutual from March 30

through approximately August 13, 2009, relying on the records of Dr. Steven A. Long who

treated Richards for her cough.  Richards' cough worsened with remodeling at the office.  By the

end of March, she was using codeine cough syrup every four hours with some benefit.  She had

already tried Lyrica, Amitriptylline, Neurontin, and botox.  Richards tried to go to work on April

14, but she began coughing again and left.  Dr. Long referred Richards to Dr. Joshua S. Schindler.

At his initial visit with Richards in May, Dr. Schindler could not identify the reason for Richards' chronic cough.  He  recommended additional studies, including a chest/lung CT scan and referral to speech pathology.  He commented that her "paroxysms are quiet severe, but she make[s] no attempt to suppress her cough.  Indeed, she exaggerates it some.  Psychological contribution should not be overlooked, but must be a diagnosis of exclusion."  Tr. 213.

Richards began speech pathology in May.  She had attended before in August 2007, after receiving a diagnosis of dysphonia and chronic cough, and had made progress on decreasing her cough at that time but did not complete treatment.

Dr. Long prescribed Singulair and prednisone in June; Richards was coughing heavily during the appointment.  Two weeks later, Richards reported the prednisone did not help, but codeine helped some, and she was frustrated because she could not really move around even at home without coughing.  She worked with speech therapist Blaise Scollard to speak in a clear voice to avoid irritating her throat.

Dr. Schindler examined Richards again in July; Richards reported her cough was a little better and she had good and bad days.  Singulair helped the cough at night and she took Hydromet ever four hours during the day.  Dr. Schindler commented that he observed Richards' cough and thought it was "forced and exaggerated."  Tr. 208.  He concluded by noting her workup had been "extremely thorough.  I cannot think of any more useful diagnostic or therapeutic avenues to explore with the possible exception of cough suppression therapy here with Linda Bryans, CCC-SLP, and consideration of psychogenic cough."  Tr. 209.

In October, Dr. Long noted Richards had retired from her job; she was working on breath holding and glottal resonance and had started walking three times a week.  She was coughing heavily during her appointment.

At the request of Disability Determination Services, Dr. Molly McKenna examined Richards on November 6, 2009.  Richards believed herself free of depression and, although she continued taking antidepressants, she was no longer seeing a therapist since her primary care provider could prescribe the medication.  She reported difficulty falling asleep, being tired, and occasional trouble concentrating, all due to her cough.  Her typical day involved walking, playing with her pets, taking a nap, doing chores, playing games, and sending emails.  She found it helpful to stay rested to keep her cough at bay.  Dr. McKenna observed Richards coughing "occasionally during the interview, usually for anywhere from a few seconds to 15-20 seconds. Her coughing did not prevent her from completing her thoughts or answering questions appropriately."  Tr. 350.  Dr. McKenna diagnosed a "remote history of Major Depressive Disorder and current Somatoform Disorder NOS characterized by a chronic, psychogenic cough" and recommended cognitive behavioral treatment.  Tr. 351.  Nevertheless, Richards displayed good attention, concentration, memory and pace, and Dr. McKenna described her as friendly with a high level of social activity.  In short, "there are few psychological or cognitive barriers to helping her find full-time, sustained employment."  Tr. 352.

Richards was assigned to an intensive outpatient program in December 2009.  She attended the group meetings consistently.  Upon discharge a month later, the therapist noted Richards did have coughing fits which interrupted her participation, but "overall that did not

occur very frequently and pt. did remark that her coughing actually improved while at IOP." Tr. 494.

In January 2010, and again in February, Dr. Long wrote letters on behalf of Richards opining that Richards suffered from an intractable neurogenic cough, that the cough prevented her from working because it caused incontinence, interfered with her concentration, and exhausted her. He also reported she could only stand/walk from zero to two hours, and sit for four hours. She could never stoop or crouch, and she would miss more than four days per month due to her "chronic neurogenic cough." Tr. 406.[1] However, later in February 2010, Dr. Long opined he was "not qualified to make judgments" as to how long Richards could walk, stand, and sit, and how much she could lift frequently and occasionally. Tr. 401. He reported the "patient is disabled because any activity can and usually does lead to a cough." Additionally, fatigue was a problem for Richards, he opined.

Dr. Alistair Scriven saw Richards in February 2010 for her cough. She reported the cough had lasted for more than ten years, but then she remembered her husband almost threatened to leave her if she did not quit smoking because of her persistent cough in 1980. Dr. Scriven commented that this history means she has been coughing for at least 27 years, if not longer. She was coughing in the interview when laughing or breathing in, but when she was quiet she was not coughing. Dr. Scriven recommended breathing techniques, drinking warm water, and gargling carbonated beverages.

_____

[1]Although Dr. long dated the functional capacity analysis "1/11/09" he faxed it "1/11/10." Compare Tr. 404 with Tr. 405.

Dr. Kenneth Ettinger treated Richards in May 2010 for her cough.  He prescribed an inhaler and recommended gargling with saltwater.

Richards attended outpatient group and individual counseling with a licensed social worker beginning in January 2010.  She explained she retired after twenty years because of her chronic cough, causing fatigue.  She felt frustrated by the cough because it exhausted her, exacerbated her urinary incontinence and affected her relationship with her husband.  In February, she reported improved mood, that she was leading her social club, gardening, and walking three to five times a week.  In March, she reported walking, playing cards with friends, and shopping every day that week.  She was a "happy camper" and feeling well enough with her cough to go to the Blues Festival, but had been frustrated by her cough while volunteering at Dress for Success in June.  Tr. 426.  In July she reported increased signs of depression when she stopped taking Cymbalta due to hives; she was willing to return to seeing her therapist and attend group.

Dr. David J. van de Lindt conducted a psychiatric evaluation on July 14, 2010.  Richards reported long periods of depression in her life, waxing and waning, and Dr. van de Lindt found her depression in partial remission with a stable mood.  He assigned a global assessment of functioning score of between 60 to 65, reflecting mild symptoms.[2]

---

[2]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 51 to 60 means "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)."  The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV") (version in use at time of examination).  A GAF of 61 to 70 means "**Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the

(continued...)

Richards attended further group counseling January through September 2011.  She was doing "quite well."  Tr. 528.  She was taking water aerobics three days a week, walking, and going out to dinner.  Her cough was "more of an issue" in February.  She reported doing water aerobics three times a week in May and June, and working in her yard.  At her July session, she had a coughing fit and had to leave group early.  She also learned that month that she had actually broken her foot earlier in the year, and was ordered to rest more.  Nevertheless, she was remaining active with a diet group and doing "quite well."  Tr. 618.  Her husband had a stroke in August, so she was taking care of him, but was also walking, going to the beach, and visiting hospitalized friends in August and September.

Dr. Long saw Richards in April 2011.  He reported she still had the cough, but was "tolerating it pretty well."  Tr. 565. The cough syrup helped more than anything else.

Dr. Long completed a medical source statement in April 2011, indicating he began treating Richards in May 2007, that he saw her every three to five months, and opined Richards experienced no pain and fatigue at a level of 3 out of 10.  Nevertheless, he believed she could sit for only three hours and could stand/walk for only up to two hours.  She could lift and carry 10 pounds occasionally, and 20 pounds rarely.  He believed Richards would have significant limitations in repetitive reaching, handling, fingering or lifting, would have to use an assistive device to stand or walk, and could not stoop, push or kneel.

Dr. Long's August treatment note was identical to the April treatment note.

---

[2](...continued)
household), **but generally functioning pretty well, has some meaningful interpersonal relationships.**"  Id.

**DISCUSSION**

I.    <u>Severe Impairments</u>

Richards argues the ALJ erred in concluding Somatoform Disorder was a nonsevere impairment.  The ALJ identified the "medically determinable mental impairments of depression and somatoform disorder," but decided they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  Tr. 23.

Dr. McKenna diagnosed Richards with "remote history of Major Depressive Disorder and current Somatoform Disorder NOS characterized by a chronic, psychogenic cough."  Tr. 351. The only symptoms from the Somatoform Disorder she described were those related to Richards' cough:  left work due to coughing, coughing for two solid hours, and the cough sometimes produced incontinence and vomiting.  These were the very symptoms examined by the ALJ for the impairment he found severe:  intractable coughing.  Furthermore, Richards is unable to point to any medical opinion suggesting Richards' mental impairments imposed any functional limitations at all.  In fact, Dr. McKenna noted Richards' "coughing did not prevent her from completing her thoughts or answering questions appropriately," that the coughing "tendency" may be treatable with therapy, and that "there are few psychological or cognitive barriers to helping her find full-time, sustained employment."  Tr. 350-51.  Dr. van de Lindt identified only mild symptoms from Richards' recurrent Major Depressive Disorder, now in remission.  Since Richards is unable to point to symptoms or limitations associated with a diagnosis of Somatoform Disorder as compared with intractable coughing, there is no error.

II.    Richards' Testimony

Richards contends the ALJ erred in his evaluation of her testimony.  She testified that she had been attending group counseling for a little over a year, that she was taking medications for her depression, thyroid, osteoporosis, cough, rheumatoid arthritis and migraines, and that she had to retire from her job because of her cough.  She thought she could stand and walk for less than an hour in an eight-hour period.  She napped twice a day for a total of two hours so as to keep her cough under control.  If she laughed or engaged in physical activity, she would cough.  She testified she was no longer walking because of pain in her foot and she had stopped participating in her social club because of the semi-annual dues.

The ALJ concluded Richards' condition could cause some of the symptoms, but was not as limiting as she alleged.  He pointed to the conservative and routine medical treatment, that her medications did not cause side effects, that Dr. Schindler commented Richards exaggerated her cough, that Richards' cough only occasionally interrupted group therapy and she reported her cough had improved, Richards' level of activity was inconsistent with her testimony, and that the medical evidence as a whole did not support Richards' assertions.

Richards takes issue with the ALJ's conclusion that the medical treatment for her cough was too conservative to credit Richards' testimony.  She suggests there is no evidence supporting a conclusion that more intrusive treatment would have cured her cough, or that any different treatment was an option.  Finally, her daily activities were insubstantial and allowed for rest in between.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective

Page 12 - OPINION AND ORDER

medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence.  Id.  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The Commissioner concedes she does not understand the ALJ's reliance on Richards' course of treatment and lack of medication side-effects as reasons to find Richards less credible. Accordingly, the Commissioner does not rely on these reasons.

Nevertheless, the fact that the ALJ improperly considered some reasons for finding Richards' credibility undermined does not mean the ALJ's entire credibility assessment is improper.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).  For example, the ALJ pointed to Dr. Schindler's perception that Richards exaggerated her cough and made no attempt to suppress it.  Additionally, therapist reports reflected Richards' cough improved with treatment.  These are clear and convincing reasons to find Richards' testimony

less than credible.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) ("tendency to

exaggerate" an appropriate credibility consideration); Warre v. Comm'r of Soc. Sec. Admin., 439

F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled are not disabling).

Furthermore, the ALJ could properly rely on Richards' active life to suggest she was not

as limited as she testified.  See Molina, 674 F.3d at 1112-13 (daily activities "inconsistent with

alleged symptoms" a credibility factor).  Richards' regular walking habit and participation in

water aerobics–which she stopped not because of her cough, but because of pain in one

foot–suggest her cough was not as limiting as she described.  Similarly, her active social

life–which she stopped because of the expense, and not because of her cough–again suggests her

cough did not affect her interactions with people.

Finally, the ALJ considered the medical opinion evidence, which supported Richards'

ability to work.  Both Dr. McKenna and Dr. van de Lindt found no functional limitations keeping

Richards from working.  Batson, 359 F.3d at 1196 (examining physician's opinion that a

claimant's ability to work is not objectively limited undermines credibility).

The ALJ identified specific, clear and convincing reasons for finding Richards' testimony

about her limitations not fully credible.

III.     Medical Evidence

The weight given to the opinion of a physician depends on whether the physician is a

treating physician, an examining physician, or a nonexamining physician.  More weight is given

to the opinion of a treating physician because the person has a greater opportunity to know and

observe the patient as an individual.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  If a

treating or examining physician's opinion is not contradicted by another physician, the ALJ may

only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart,

454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another

physician, the ALJ may not reject the opinion without providing specific and legitimate reasons

supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at

1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial

evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066

n.2.

      A.     Dr. McKenna

Even though the ALJ gave "great weight" to Dr. McKenna's opinion, Richards suggests

the ALJ rejected Dr. McKenna's diagnosis of Somatoform Disorder and opinion that Richards'

cough was psychogenic in origin.  Tr. 27.  The fact that the ALJ found Somatoform Disorder a

nonsevere impairment is irrelevant; as I indicated above, the disorder imposed no different

limitations than those considered by the ALJ in forming the RFC and his opinion was consistent

with Dr. McKenna's conclusion that the diagnosis imposed no additional functional limitations.

As a result, contrary to Richards' argument, there was no "silent rejection" of Somatoform

Disorder.  Indeed, Dr. McKenna concluded that, despite the disorder, "there are few

psychological or cognitive barriers to helping [Richards] find full-time, sustained employment."

Tr. 352.

In her reply, Richards suggests Dr. McKenna's opinion contains an internal

inconsistency–she concluded Richards was credible, her illness produced a chronic cough, but

that the symptoms posed no problems with employment–and that the ALJ should have addressed

this inconsistency.  The ALJ could rationally conclude, however, that Dr. McKenna found

Richards' symptoms credible but, based on her own observations, not a barrier to employment. There is no error here.

B.    Dr. Long

The ALJ gave little weight to Dr. Long's many opinions. He noted Richards' activities were not as limited as Dr. Long opined, Richards' condition improved over time when Dr. Long found her more restricted over time, Dr. Long contradicted himself, and his opinions covered only brief periods of time.

Richards argues the ALJ erred in rejecting Dr. Long's opinions and that he failed to analyze the opinion under the six factors set out in 20 C.F.R. § 404.1527(d). She also contends the ALJ's reasons are not legitimate. Specifically, she takes issue with the ALJ's reliance on Richards' sporadic daily activities, as well as the ALJ's characterization of Dr. Long's restrictions as increasing over time and that the restrictions covered only "brief" periods when they covered the entire period of disability.

Dr. Long's opinions are uncontradicted since he is the only doctor who gave an opinion regarding any physical limitations caused by Richards' cough. The ALJ gave clear and convincing reasons for giving little weight to them. As the ALJ noted, Dr. Long placed Richards' level of pain at 0 and her fatigue at level 3 out of 10, which was inconsistent with his opinion that Richards was limited in her ability to stand, walk, and sit. The limitations in standing, walking and sitting were in turn inconsistent with Richards' own level of activity. Additionally, in 2010 the doctor concluded he was not qualified to assess these limits, but then gave an opinion on those very activities in 2011. Finally, the record reflects Richards' cough improved with treatment, but Dr. Long's opinions grew more restrictive over time. These are all

Page 16 - OPINION AND ORDER

clear and convincing reasons for the ALJ not to credit Dr. Long's conclusions.  Batson, 359 F.3d at 1195 (opinion that is "brief, conclusory, and inadequately supported by clinical findings" not entitled to great weight); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (internal inconsistencies in doctor reports are relevant evidence; ALJ must resolve conflicts in medical evidence).

The ALJ gave clear and convincing reasons, supported by substantial evidence in the record, to reject Dr. Long's opinions.

IV.    Lay Witness

Finally, the ALJ, according to Richards, failed to fully address the lay statement of Jeffrey Baumer, a former co-worker.  The ALJ did not comment on Baumer's report that Richards was "forced" to leave because of her cough, that she had trouble dressing and driving because of coughing, and that she was sometimes bedridden all day due to her symptoms.  Tr. 173.

The ALJ instead considered Baumer's comments that Richards took care of her pets, could prepare her meals, went for walks, and shopped for groceries and clothes, read, watched TV, played cards, used the internet, and visited friends.  The ALJ concluded this evidence suggested Richards was not as limited as she alleged.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).  An ALJ's failure to discuss testimony may be harmless if it is "inconsequential to the ultimate nondisability determination in the context of the record as a whole."  Molina, 674 F.3d at 1122.

The ALJ did not address Baumer's full statement, and should have explained his implicit rejection of the remainder of Baumer's observations.  Nevertheless, his failure to do so is harmless error.  The ALJ's valid reasons to reject Richards' similar testimony are equally relevant to the remainder of Baumer's testimony.  Molina, 674 F.3d at 1114.

V.      Vocational Expert ("VE") Testimony

Richards complains the ALJ did not ask the VE whether any discrepancy existed between his opinion Richards could perform her past relevant work and the Dictionary of Occupational Titles ("DOT").  She relies on Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007).

The VE identified the DOT number for each of Richards' past jobs and opined that someone with Richards' RFC could perform those jobs.  There is no apparent conflict, and Richards has failed to identify a conflict.  According to Massachi, then, any failure on the ALJ's part to ask whether the VE's testimony was consistent with the DOT is harmless error.  486 F.3d 1153-54 n.19.

VI.     Records Submitted to the Appeals Council

Richards argues the Commissioner failed to adequately address additional records submitted to the Appeals Council covering eight months in 2011.

Additional evidence presented to the Appeals Council but not seen by the ALJ must be considered in determining if the ALJ's denial of benefits is supported by substantial evidence. Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).

Richards fails to explain why the updated treatment records require reversal of the ALJ's decision.  Indeed, the records demonstrate Richards was doing water aerobics three times a week in May and June, and working in her yard.  She was ordered to rest more in July, after she

Page 18 - OPINION AND ORDER

learned she had broken her foot, but her cough only bothered her at one group session in July,

and Dr. Long's treatment note in August indicated Richards was tolerating her cough well.

Nothing in these treatment records could undermine the ALJ's conclusion about Richards' ability

to perform her past work.

### CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards.  For these reasons, the court affirms the decision of the

Commissioner.

IT IS SO ORDERED.


DATED this ___3rd___ day of July, 2013.


_/s/ Garr M. King_____
Garr M. King
United States District Judge